```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

        - v. -                    :    11 Cr. 567 (PAC)

JOSEPH FREEMAN,                   :

            Defendant.            :

- - - - - - - - - - - - - - - - - - -x
```

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

```
                            PREET BHARARA
                            United States Attorney for the
                            Southern District of New York
                            One St. Andrew's Plaza
                            New York, New York 10007
```

```
RACHEL MAIMIN
Assistant United States Attorney
    -Of Counsel-
```

**TABLE OF CONTENTS**

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . . I

PRELIMINARY STATEMENT.. . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The Defendant's Allegations.. . . . . . . . . . . . . . 3

DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    The Defendant Has Failed to Establish Standing to Suppress the Firearm Under the Fourth Amendment.. . . 4

        1.    Applicable Law.. . . . . . . . . . . . . . . . . 4

        2.    Discussion.. . . . . . . . . . . . . . . . . . . 5

    B.    An Investigative Stop Is Appropriate Where The Police Have Reasonable Suspicion To Believe That An Individual Is Involved In Criminal Activity Based in Part On An Anonymous 911 Caller's Tip. . . . . . . 6

        1.    Reasonable Suspicion Standard. . . . . . . . . . 6

            (a)   Anonymous 911 Callers.. . . . . . . . . . . 10

        2.    "Seizure" Standard.. . . . . . . . . . . . . . . 12

    C.    Law Enforcement Officers Are Permitted To Conduct a Protective Search for Weapons Based on a Reasonable Belief that the Suspect is Armed. . . . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**PRELIMINARY STATEMENT**

The Government respectfully submits this Memorandum of Law in response to defendant Joseph Freeman's motion to suppress the firearm recovered from him by the New York City Police Department on April 27, 2011 (the "firearm"). The Court should dismiss the defendant's motion without a hearing because he has failed to demonstrate standing under the Fourth Amendment. In particular, the defendant has failed to demonstrate a privacy interest in the area from which the firearm was seized or a possessory interest in the firearm itself.

If the Court does not deny the motion on the basis of standing, the Government consents to an evidentiary hearing. At a hearing, the Government expects the evidence will show that officers properly stopped the defendant based on reasonable suspicion created by 911 calls describing ongoing criminal activity, and by the officers' observations of the defendant.

**BACKGROUND**

The defendant is charged in a one-count indictment with possessing a firearm after having been convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1). At the hearing, the Government expects the evidence will show the following facts:

At approximately 1:40 a.m. on April 27, 2011, an NYPD radio dispatch officer made two notifications to other officers corresponding to two 911 calls placed by the same individual (the "911 Caller"). (Compl. ¶ 2.) During the first notification, the

NYPD dispatcher stated, in substance and in part, that the 911 Caller had notified the police that an Hispanic male with a firearm, black hat, and white t shirt (the "Armed Man") was in the vicinity of a Chase Bank located at 1308 East Gun Hill Road, Bronx, New York.  (Compl. ¶ 2.)  During the second notification, based on amended information provided by the 911 Caller, the NYPD dispatcher stated, in substance and in part, that the Armed Man was a black male with a white do-rag, black hat, and long white t-shirt.  (Compl. ¶ 2.)

Two officers on patrol in an unmarked car saw an individual matching the amended description of the Armed Man in the vicinity of Young Avenue and East Gun Hill Road.  (Compl ¶ 3(a).)  One of the officers tried to stop the defendant by touching his elbow, but the defendant shrugged him off.  (Compl ¶ 3(b).)  The other officer also tried to stop the defendant, but the defendant shrugged him off as well, continuing to walk down the street.  (Compl ¶ 3(b).)

One of the officers put his hands around the defendant's waist in an attempt to stop him.  The defendant began struggling and, during the course of the struggle, the defendant reached for his waist.  (Compl ¶ 3(c).)

One of the officers placed the defendant under arrest. (Compl ¶ 3(d).) A third police officer with the NYPD, who had arrived on the scene to aid in the arrest, patted the defendant

down and recovered a 9mm Luger semi-automatic pistol loaded with 10 live rounds from the defendant's waistband. (Compl ¶ 3(c).)

**A.  The Defendant's Allegations**

The defendant's affidavit in support of this motion alleges that, prior to his arrest, he had been at a bar in the area of East Gun Hill Road and Young Avenue in the Bronx. (Freeman Aff. ¶ 4.) At around 1:40 a.m., he reports, he was walking near the intersection of Young Avenue and East Gun Hill Road, and "not causing a disturbance, acting in an unusual manner, threatening anyone, or doing anything suspicious." (Freeman Aff. ¶ 5.) As he was walking, the defendant contends that "two men rushed at [him] and grabbed [him]," without identifying themselves as police. (Freeman Aff. ¶ 6.) The defendant alleges that he did not see the officers' shields. (Freeman Aff. ¶ 6.)

The defendant says that he was "startled and did not understand what was happening," (Freeman Aff. ¶ 7), that he "tried to pull away" from the men, but that they "shoved [him] to the ground and pinned [him] there." (Freeman Aff. ¶ 7.) The defendant denies that he "r[an] or attempt[ed] to run" from the men. (Freeman Aff. ¶ 8.)

The defendant says that he realized the men were police officers after they put him in handcuffs. (Freeman Aff. ¶ 10.) The defendant alleges that one of the officers frisked and searched

3

him, (Freeman Aff. ¶ 10), and that he "was told he was arrested for having a gun." (Freeman Aff. ¶ 11.)

## DISCUSSION

### A. The Defendant Has Failed to Establish Standing to Suppress the Firearm Under the Fourth Amendment

#### 1. Applicable Law

Rights conferred by the Fourth Amendment are personal rights. As a result, a defendant may seek suppression of evidence under the Fourth Amendment only where his own personal rights have been violated. *Simmons* v. *United States*, 390 U.S. 377, 389-90 (1968). A defendant bears the burden to establish that he has standing to assert his Fourth Amendment rights. *Rakas* v. *Illinois*, 439 U.S. 128, 130 n.1 (1978).

It is well-established that the Fourth Amendment protects several distinct interests, including an individual's privacy interest in his home or possessions, his liberty interest in freedom from restraint of his person, and his possessory interest in protection of his property from seizure. *See, e.g, Segura* v. *United States*, 468 U.S. 796, 806 (1984) ("Different interests are implicated by a seizure than by a search. A seizure affects only the person's possessory interests; a search affects a person's privacy interests."); *Horton* v. *Arizona*, 496 U.S. 128, 133 (1990) ("The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches

and seizures. A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property."); *United States* v. *Jacobsen*, 466 U.S. 109, 113 (1984) ("[The Fourth Amendment] protects two types of expectations, one involving 'searches,' the other 'seizures.' A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."); *see also Shaul* v. *Cherry Valley-Springfield Central School District*, 363 F.3d 177, 185 (2d Cir. 2004) ("A seizure occurs when there is some meaningful interference with an individual's possessory interest in [seized] property.").

### 2.  Discussion

The defendant has moved to suppress the gun seized during his arrest on April 27, 2011. The defendant's allegations, however, are insufficient to show that he has standing to make the instant motion. The defendant has failed to demonstrate a possessory interest in the gun or to assert that it was seized from a place where he had a legitimate expectation of privacy. The defendant reports that he was "frisked and searched" after being handcuffed, (Freeman Aff. ¶ 10), and that he was "told he was arrested for having a gun." (Freeman Aff. ¶ 11.) He further states that his "attorney has advised him that the officers'

5

conduct violated [his] constitutional rights." (Freeman Aff. ¶ 12.) However, the defendant fails to state that any gun was seized from him during that search, or to articulate any possessory interest in the firearm that would confer standing. He also fails to allege that the gun was seized from a location where he has a reasonable expectation of privacy. Instead, the defendant takes care to avoid saying that the firearm was in his waistband. Under these circumstances, the defendant has failed to meet his fundamental burden to show a possessory interest in the item seized or a legitimate expectation of privacy in the area searched.

**B. An Investigative Stop Is Appropriate Where The Police Have Reasonable Suspicion To Believe That An Individual Is Involved In Criminal Activity Based in Part On An Anonymous 911 Caller's Tip**

Even if the defendant had standing to bring this motion, the investigative stop of the defendant was proper, since officers had reasonable suspicion to believe he was involved in criminal conduct based on 911 calls.

**1. Reasonable Suspicion Standard**

A police officer may conduct a brief "investigative detention" by stopping a person to investigate possibly criminal behavior, so long as at the time the officer effects the stop, the officer has "'reasonable suspicion' to believe that criminal activity has occurred or is about to occur." *United States* v. *Tehrani*, 49 F.3d 54, 58 (2d Cir. 1995) (citing *United States* v.

*Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992)); *see also Terry*, 392 U.S.; *United States* v. *Vargas*, 369 F.3d 98, 101 (2d Cir. 2004). While the standard of reasonable suspicion cannot be defined with precision, *United States* v. *Bayless*, 201 F.3d 116, 133 (2d Cir. 2000), and is "somewhat abstract," *United States* v. *Arvizu*, 534 U.S. 266, 274 (2002), the Supreme Court and the Second Circuit have held that it arises when law enforcement officers are "aware of specific articulable facts, together with rational inferences from those facts," that reasonably justify suspicion. *United States* v. *Brignoni-Ponce,* 422 U.S. 873, 884 (1975); *see also United States* v. *Jaramillo*, 25 F.3d 1146, 1150-51 (2d Cir. 1994) (holding that law enforcement officer may conduct a *Terry* stop without infringing the Fourth Amendment so long as the circumstances "'would warrant a man of reasonable caution' in the belief that a brief investigative stop is appropriate") (quoting *Terry*, 392 U.S. at 21-22).

"Reasonable suspicion" is measured by an objective test, *Glover*, 957 F.2d at 1010, and by reviewing the circumstances as a whole, not as discrete and separate facts. *United States* v. *Barlin*, 686 F.2d 81, 86 (2d Cir. 1982); *see also Arvizu*, 534 U.S. at 273 ("When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing.").

The test for reasonable suspicion is a "rather lenient" one, *United States* v. *Santana*, 485 F.2d 365, 368 (2d Cir. 1973), which the Second Circuit has described as "not a difficult one to satisfy." *United States* v. *Oates*, 560 F.2d 45, 63 (2d Cir. 1977). "[T]he level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause," *United States* v. *Sokolow*, 490 U.S. 1, 7 (1989), and requires "'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *Tehrani*, 49 F.3d at 58 (quoting *Glover*, 957 F.2d at 1009); *accord Arvizu*, 534 U.S. at 274. As the Supreme Court emphasized in *Alabama* v. *White*, 496 U.S. 325 (1990), "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause [and] can arise from information that is less reliable than that required to show probable cause." *Id.* at 330; *see United States* v. *Lawes*, 292 F.3d 123, 127 (2d Cir. 2002) (reasonable suspicion "not a high threshold").

Determinations of reasonable suspicion must be conducted "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States* v. *Colon*, 250 F.3d 130, 134 (2d Cir. 2001) (quoting *Bayless*, 201 F.3d at 133; *see also United States* v. *Echevarria*, 692 F. Supp. 2d 322, 333 (S.D.N.Y. 2010) ("Courts have repeatedly emphasized that

reasonable suspicion is measured from the perspective of a trained and experienced law enforcement officer.").

Reasonable suspicion may be based on a variety of factors including, among other things, a defendant's flight from the police. *Illinois* v. *Wardlow*, 528 U.S. 119, 124 (2000). ("Headlong flight--whenever it occurs--is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); *United States* v. *Simmons*, 560 F.3d 98, 107 (2d Cir. 2009) ("Flight in response to an order to stop is relevant to the reasonableness of a stop because it precedes the seizure, which occurs when the fleeing suspect is physically apprehended.").

A defendant's presence in a high-crime area is also a factor in determining reasonable suspicion. *Wardlow*, 528 U.S. at 124; *United States* v. *Herring*, No. 07-1718-cr, 2010 WL 1731817, at *2 (2d Cir. Apr. 30, 2010) (noting that "'officers are not required to ignore the relevant characteristics of a location,' including its presence in a 'high crime area,' in assessing whether the totality of circumstances manifests a likelihood of criminal activity.") (quoting *Wardlow*, 528 U.S. at 124)).

In short, the determination of reasonable suspicion "must be based on commonsense judgments and inferences about human behavior." *Wardlow*, 528 U.S. at 125; *see also Echevarria*, 692 F. Supp. 2d at 333 ("The process 'does not deal with hard certainties, but with probabilities' and properly takes into account that

9

trained law enforcement agents may make observations and draw conclusions that go beyond the capacity of a lay person.") (quoting *United States* v. *Cortez*, 449 U.S. 411, 418 (1981)). In that analysis, factors that by themselves suggest innocent conduct may add up to reasonable suspicion when viewed as a whole. *See Arvizu*, 534 U.S. at 274-75; *see also United States* v. *Villegas*, 928 F.2d 512, 516 (2d Cir. 1991) ("Conduct as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity.").

### (a) Anonymous 911 Callers

An anonymous tip that a person is carrying a gun is not sufficient, alone, to justify a police officer's stop and frisk of that person. *Florida* v. *J.L.*, 529 U.S. 266, 268 (2000). However, "personal observations made by the officers that corroborate information by an unknown and unaccountable tipster may provide the basis for a reasonableness finding." *United States* v. *Muhammad*, 463 F.3d 115, 122 (2d Cir. 2006); *see also United States* v. *Walker*, 7 F.3d 26, 31 (2d Cir. 1993) (where police corroborated several aspects of an anonymous tip regarding a suspect carrying a firearm, including the suspect's physical appearance, there was reasonable suspicion to seize the suspect); *Echevarria*, 692 F. Supp. 2d at 333 ("[I]t is settled law that anonymous tips of criminal activity accompanied by independent, corroborated observations of police officers may compel police to conduct a *Terry* stop.").

With respect to the tip itself, courts have repeatedly held that a report of criminal activity is entitled to heightened reliability where "the tipster was an eyewitness who had recently witnessed the alleged criminal activity." *United States* v. *Torres*, 534 F.3d 207, 211 (3d Cir. 2008); *United States* v. *Wheat*, 278 F.3d 722, 735 (8th Cir. 2001) ("We think that an anonymous tip conveying a contemporaneous observation of criminal activity whose innocent details are corroborated is at least as credible as the one in *White*, where future criminal activity was predicted, but only innocent details were corroborated."); *United States* v. *Perkins*, 363 F.3d 317 (4th Cir. 2004)("The tip itself made clear both that the caller was in close proximity to the duplex and that the caller personally had observed the men.  The tipster's basis of knowledge – a contemporaneous viewing of the suspicious activity – enhanced the tip's reliability.").

The Second Circuit has also made clear that "an anonymous 911 call reporting an ongoing emergency is entitled to a higher degree of reliability and requires a lesser showing of corroboration than a tip that alleges general criminality." *Simmons*, 560 F.3d at 105.  In *Simmons*, the Second Circuit held that the case involved an "emergency call" even where, upon arriving at the location given by the 911 caller, the police did not find evidence of an ongoing crime, but merely "confirmed that [the defendant's] appearance matched the description of the suspect and

11

that [the defendant] was present at the specified location." 560 F.3d at 107-08. While "[t]he basic requirement remains that an investigative stop must be predicated on reasonable suspicion that criminal activity is afoot," the "greater reliability of an emergency 911 call" requires a lesser "level of corroboration" than an anonymous 911 call in a non-emergency situation. *See id.* at 105. "This approach recognizes the need for police to act on reports of an emergency situation without delay, but still requires police officers to corroborate allegations of criminal activity in some meaningful way." *Id.* (citation omitted).

### 2. "Seizure" Standard

The Fourth Amendment is not implicated in every encounter between citizens and police officers. *See, e.g., United States* v. *Mendenhall*, 446 U.S. 544, 553 (1980) ("[N]ot every encounter between a police officer and a citizen is an intrusion requiring an objective justification."). Rather, it becomes relevant only when a person is seized, that is, when "[an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ." *Terry*, 392 U.S. at 19 n.16. "The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is unsuccessful." *California* v. *Hodari D.*, 499 U.S. 621, 626 (1991).

When an officer "seizes" a defendant by touching him, however, that seizure may end if the defendant breaks away. *See*

*Hodari D.*, 499 U.S. at 625 ("To say that an arrest is effected by the slightest application of physical force, despite the arrestee's escape, is not to say that . . . there is a *continuing* arrest. . . .") (emphasis in original).  Where a defendant is "seized" by an initial application of physical force, but breaks away, the reasonable suspicion inquiry may take into account everything that transpires until a subsequent, successful seizure by the police. *See id.*, 499 U.S. at 625 (explaining that, if, "for example, [the police officer] had laid his hands upon Hodari to arrest him, but Hodari had broken away and *then* cast down the cocaine, it would hardly be realistic to say that [the cocaine was cast down] during the course of the arrest") (emphasis in original); *United States v. Jones*, 609 F. Supp. 2d 113, 127 (D. Mass. 2009) (holding that, "[e]ven if the cruiser bumped the [defendant's] bicycle as part of an intentional effort to stop Jones and he was briefly seized, that seizure ended when he fled," and thus the reasonable suspicion inquiry should take into account everything that happened until defendant was tackled by police); *United States* v. *Williams,* 608 F. Supp. 2d 325, 330 (E.D.N.Y. 2008) (explaining that, for purposes of the reasonable suspicion inquiry, "[b]y breaking free of [the officer's] grasp, Williams rendered the legality of that seizure an irrelevancy").

       Here, the evidence presented at the hearing will show that the officers had reasonable suspicion to stop the defendant

13

based on the information provided by the 911 Caller, which bore substantial indicia of reliability--including exigency and contemporaneousness. The evidence at the suppression hearing will also establish that the information the Caller provided to the police was corroborated by the officers' observations of the defendant at the scene. The evidence will show that the officers, therefore, had reasonable suspicion to attempt to stop the defendant by touching his elbows.

However, the evidence presented at the hearing will also show that, after the officers touched his elbows, the defendant attempted to flee and struggled with the officers. During this struggle, the defendant was seen reaching for his waistband.

In sum, the evidence at the hearing will demonstrate that the officers had reasonable suspicion to stop the defendant even without taking into account the defendant's actions after the officers physically touched him. However, based on the foregoing authority, the Court should also take into account the defendant's attempted flight and other actions subsequent to the officers' initial attempt to stop the defendant.

**C. Law Enforcement Officers Are Permitted To Conduct a Protective Search for Weapons Based on a Reasonable Belief that the Suspect is Armed**

After stopping a suspect pursuant to reasonable suspicion, an officer is permitted to conduct a protective search for weapons if the officer has "reason to believe that he is

14

dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry*, 392 U.S. at 27. "The officer need not be absolutely certain that the suspect is armed," *id.*, but may conduct the protective search if a reasonably prudent man in the officer's position "would be warranted in the belief that his safety or that of others was in danger." *Id.*; *see also United States* v. *Alexander,* 907 F.2d 269, 272 (2d Cir. 1990) ("A law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists.").

Here, the evidence at any hearing will show that the officers conducted a lawful protective search based on the reasonable belief that the defendant was armed.

## **CONCLUSION**

The defendant's motion to suppress should be denied for lack of standing. If the Court does not dismiss the motion on those grounds, the defendant's motion should be denied, based on

the foregoing authority, after hearing the live testimony of the Government witnesses and other evidence.

Dated:    New York, New York
          August 31, 2011

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney
                              Southern District of New York

                        By:      /s/ Rachel Maimin
                              RACHEL MAIMIN
                              Assistant United States Attorney
                              Telephone: (212) 637-2460

## **CERTIFICATE OF SERVICE**

RACHEL MAIMIN deposes and says that she is employed in the Office of the United States Attorney for the Southern District of New York.

That on August 31, 2011, she caused to be served a copy of the foregoing Government's Memorandum of Law in Opposition to Defendant's Motion to Suppress, by filing it via Electronic Filing, thereby sending notice to all Counsel of Record.

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. Section 1746.

```
             _____/s/_____
                   RACHEL MAIMIN
```

Executed on:   August 31, 2011
               New York, New York